IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| KATHY L. CARVER, | ) | |
| | ) | |
| Plaintiff | ) | Civil No. 08-6099-MO |
| | ) | |
| v. | ) | OPINION AND ORDER |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**MOSMAN, J.,**

Plaintiff Kathy Carver challenges the Commissioner's decision finding her not disabled and denying her application for Disability Insurance Benefits ("DIB"). I have jurisdiction under 42 U.S.C. § 405(g). For the following reasons, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

I review the Commissioner's decision to ensure that the Commissioner applied proper legal standards and that his findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

PAGE 1 - OPINION AND ORDER

The Administrative Law Judge ("ALJ") made his decision based upon a five-step sequential process established by the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (9th Cir. 1987); 20 C.F.R. § 404.1520(a). Ms. Carver challenges the ALJ's evaluation of Ms. Carver's testimony, the ALJ's evaluation her treating physician's opinion, and the ALJ's finding that Ms. Carver could perform her past relevant work.

## THE ALJ'S FINDINGS

The ALJ found Ms. Carver's sarcoidosis,[1] with a history of affecting multiple body organs, "severe" at step two in the sequential proceedings. (A.R. 19.)[2] The ALJ assessed Ms. Carver's Residual Functional Capacity ("RFC"):

> [T]he claimant has the residual functional capacity perform light work. "Light exertion work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. She is able to lift and/or carry up to 20 pounds occasionally and 10 pounds frequently, with pushing and pulling commensurate with these limitations. She is able to stand and/or walk for about 6 hours in an 8 hour day and sit for about 6 hours in an 8 hour day. She is limited to activities that involve no more than occasional climbing of ramps and stairs. She is to avoid activities that involve hazards and climbing of ladders, ropes and scaffolds.

(A.R. 21.) The ALJ found that this RFC allowed Ms. Carver to perform her past relevant work as a postal clerk. (A.R. 28.) The ALJ therefore found Ms. Carver not disabled. (A.R. 29.)

//

//

---

[1] Sarcoidosis is a disease of unknown cause that leads to inflamation, affecting various organs of the body. Excess inflammatory tissue may form in the skin, lungs, heart, or brain. Diseases and Conditions, National Institute of Health, *available at* http://www.nhlbi.nih.gov/health/dci/Diseases/sarc/sar_whatis.html (last visited April 23, 2009).

[2] Citations "A.R." refer to indicated pages in the official transcript of the administrative record filed on August 21, 2008 (#5).

PAGE 2 - OPINION AND ORDER

## ANALYSIS

**I.    Ms. Carver's Credibility**

Ms. Carver submits that the ALJ failed to give clear and convincing reasons for rejecting her testimony. The ALJ found Ms. Carver's statements concerning the intensity, persistence, and limiting effects of her symptoms "not entirely credible." (A.R. 23.) The ALJ based this finding on Ms. Carver's reported daily activities and the ALJ's own assessment of the medical record. (A.R. 23-28.)

**A.    *Credibility Standard***

Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged" the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id.* Once a claimant shows an underlying impairment, the ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 1998).

B.    *Analysis*

1.    **Activities of Daily Living**

The ALJ found that the activities of daily living Ms. Carver described are not limited "to the extent one would expect, given the complaints of disabling symptoms and limitations." (A.R. 24.) The ALJ explained that Ms. Carver told examining physician Dr. Harris that she is independent in her activities of daily living and shares cooking, shopping, and household tasks with her husband. (A.R. 24-25.) The ALJ additionally noted that Ms. Carver reported sewing, taking walks, and that she spent the winter in Arizona. (A.R. 25.)

The ALJ did not discuss the significance of Ms. Carver's daily activities. The Commissioner now asserts that Ms. Carver's description of her activities "contradicts other testimony." (Def.'s Br. (#14) 7.) The Commissioner does not identify the contradictory testimony, saying only that Ms. Carver's alleged degree of incapacity is incompatible with her activities. (*Id.* at 8.)

Daily activities inconsistent with alleged disability may support a negative credibility finding, but sporadic completion of daily living activities are not equivalent to full time employment. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). A claimant "need not vegetate in a dark room," to be found disabled. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citing *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987)). Here, the ALJ and the Commissioner fail to explain the manner in which Ms. Carver's limited activities contradict her allegations of disability. This finding is not sustained.

2.    **Medical Record**

The ALJ found that the "totality of the medical record reveals that the claimant is able to engage in basic work activities despite the limitations resulting from her impairment." (A.R. 23.)

PAGE 4 - OPINION AND ORDER

The ALJ made no explanation for this finding. The medical record does not show that Ms. Carver engaged in work activities during the relevant period. The ALJ's finding is not based on the record and is therefore not sustained.

The ALJ further stated that Ms. Carver's symptoms are "disproportionate" to objective findings. The Commissioner repeats this reasoning. (Def.'s Br. (#14) 5.) This reasoning is erroneous. The ALJ may not require medical evidence to corroborate the degree of symptom testimony the claimant proffers. *Lingenfelter*, 504 F.3d at 1036 (citing *Smolen*, 80 F.3d at 1282)). Such a requirement contravenes the nature of symptom testimony and the "inability of medical science to provide such evidence." *Bunnell*, 947 F.3d at 347. While the ALJ may cite the medical record regarding physician observations or a treatment course, the ALJ may not require symptom corroboration. *Smolen*, 80 F.3d at 1282, 1284. The ALJ and the Commissioner both failed to apply the appropriate standard. This reasoning is not sustained.

### 3.     Treatment Course

The ALJ also stated that Ms. Carver received treatment that "has been essentially conservative in nature." (A.R. 24.) The Commissioner asserts that because Ms. Carver sought treatment less frequently after her disability onset date, her credibility is additionally diminished. (Def.'s Br. (#14) 6.)

The record shows that Ms. Carver underwent numerous surgeries and diagnostic procedures relating to her sarcoidosis. Between March 2003 and June 2007, when the record before this court closes, Ms. Carver sought treatment and clinical testing on more than "sporadic" occasions. Physicians continued to assess sarcoidosis, which they characterized as "extensive" (A.R. 743) throughout this period (*see* A.R. 547-48, 599, 609-225, 667-34, 648-53, 715, 720-22, 726, 736, 738-

39, 743, 748, 754, 761-62, 764). The ALJ's "conservative" characterization of this treatment course does not reflect the record. Additionally, the ALJ fails to explain why conservative treatment is inconsistent with disability when treating specialists did not suggest alternative intervention.

The ALJ also noted that Ms. Carver "declined medications and further testing for her condition." (A.R. 27.) Ms. Carver testified that she feared the side effects of chronic steroid treatment. (A.R. 804.) The ALJ may not fault a claimant for failing to seek treatment where the claimant provides a reasonable explanation for doing so. *Smolen*, 80 F.3d at 1281. Furthermore, the record does not show that Ms. Carver declined testing; the record instead contains extensive abdominal, pulmonary, cardiac, and neurological imaging and functional studies. (A.R. 198-200, 296-99, 315-16, 359-63, 419-32, 449-51, 454-56, 463, 467-69, 488-91, 518, 528-30, 532-37, 557-60, 745-46, 754-55, 757-60.) The ALJ's findings that Ms. Carver declined treatment is not based upon the applicable legal standard or the record.

In summary, the ALJ's reference to Ms. Carver's limited daily activities and the manner in which the ALJ refers to her medical record do not establish "clear and convincing" reasons for rejecting Ms. Carver's testimony. The ALJ's credibility decision is therefore not sustained.

## II.    Medical Source Statements

### A.    *Standard*

Generally, the ALJ must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). This is because a treating physician's relationship with the patient ordinarily affords a greater opportunity to know and observe the patient. 20 C.F.R. § 404.1527(d)(2); *Benton v. Barnhart*, 331 F.3d 1030, 1036 (9th Cir.

2003). Furthermore, the longer the treating relationship, the more weight accorded to the treating source. 20 C.F.R. § 404.1527(d)(2)(i).

If two opinions conflict, an ALJ must give "specific and legitimate reasons" for discrediting a treating physician in favor of an examining physician. *Lester*, 81 F.3d at 830. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss*, 427 F.3d at 1216. In the end, disability opinions are reserved for the Commissioner. 20 C.F.R. § 404.1527(e)(1).

    **B.**    *Treating Physician Dr. Sutherland*

The ALJ rejected treating physician Dr. Sutherland's opinion in favor of the opinion of examining physician Dr. Harris. (A.R. 27.) Dr. Sutherland treated Ms. Carver between October 2001 and June 2007, when the record before this court closes. (A.R. 502-03, 510, 609-10, 619, 625, 637, 720, 226, 238-39.) Dr. Sutherland assessed Ms. Carver's sarcoidosis throughout this period.

Dr. Sutherland wrote a letter on January 24, 2006, describing Ms. Carver's condition. (A.R. 609-10.) Dr. Sutherland first noted that she treats Ms. Carver in conjunction with another physician with whom Dr. Sutherland shares her practice, Dr. Langdon. (A.R. 609.) Dr. Sutherland stated that her own opinion was supported by clinical notes produced by herself and Dr. Landon, as well as "many specialists," including an infectious disease specialist, pulmonolgists, surgeons, and otolaryngologists. (A.R. 609-10.) The court therefore considers all of these notes in light of the ALJ's finding that Dr. Sutherland's opinion was unsupported.

Dr. Sutherland stated that Ms. Carver's "severe sarcoidosis" involves both of her lungs and her peritoneum,[3] and that Ms. Carver's sarcoidosis may additionally show neurologic and cerebral

---

[3] The peritoneum is "an extensive serous membrane that lines the entire abdominal wall of the body." Kenneth N. Anderson et al. eds., *Mosby's Medical, Nursing, & Allied Health*

PAGE 7 - OPINION AND ORDER

manifestations. (A.R. 609.) Dr. Sutherland recounted Ms. Carver's four surgeries with subsequent complications to treat her condition, and noted Ms. Carver's additional complaints which "may or may not be related to her systemic sarcoidosis." These additional complaints include weakness, dizziness, vertigo, and fatigue. Dr. Sutherland stated that Ms. Carver experiences chronic abdominal discomfort and headaches; Dr. Sutherland did not quantify the extent of these symptoms. Dr. Sutherland also described the respiratory symptoms stemming from Ms. Carver's sarcoidosis in both lungs, specifically sporadic shortness of breath. *Id.* Finally, Dr. Sutherland noted Ms. Carver's need for rest and characterized her as in a "weakened state." (A.R. 609-10.) Dr. Sutherland concluded, "The stress from work would exacerbate her symptoms and may cause more severe exacerbation of sarcoidosis but this is difficult to calculate." (A.R. 610.)

The ALJ stated that Dr. Sutherland's notes "fail to reveal severe and disabling pain." (A.R. 27.) Dr. Sutherland did not state that Ms. Carver experiences severe pain. This comment is therefore not a clear and convincing reason to reject Dr. Sutherland's opinion.

The ALJ also noted that "much of the information Dr. Sutherland used in making her assessments came from the claimant's own subjective reports without any objective corroborations." *Id.* Dr. Sutherland's letter clearly references reports by surgeons, pulmonologists, and infectious disease specialists (A.R. 609-10), which constitute the majority of the medical record before this court. These specialist reports in turn contain both pathological test results and detailed clinical findings. The record therefore does not support the ALJ's finding that Dr. Sutherland's letter is unsupported by clinical notes and findings.

---

*Dictionary* (5th ed. 1998).
PAGE 8 - OPINION AND ORDER

Finally, the ALJ found Dr. Sutherland's opinion inconsistent with the opinions of reviewing physicians employed by Disability Determination Services and examining physician Dr. Harris. (A.R. 27.) The ALJ characterized these opinions as "other substantial evidence in the case record." *Id.* This reasoning is flawed for two reasons. First, a reviewing physician's opinion may not by itself constitute substantial evidence justifying rejection of a treating physician's opinion. *Lester*, 81 F.3d at 831. Second, Dr. Sutherland's opinion is consistent with the opinions of treating surgeons, pulmonologists, and infectious disease specialists. Citation to examining physician Dr. Harris's contradictory report, which contained no clinical laboratory or imaging tests, does not amount to "other substantial evidence" justifying rejection of the Dr. Sutherland's opinion based upon her own longitudinal treatment notes and the treatment notes produced by the numerous treating specialists she cites.

In summary, the ALJ's interpretation of the medical record is not based upon the record or the appropriate legal standards. The ALJ's rejection of Dr. Sutherland's opinion is not sustained.

### III.    Application of the Medical-Vocational Guidelines

Ms. Carver submits that application of the Commissioner's Medical-Vocational Guidelines establishes disability. Ms. Carver asserts, without clarification, that this finding respectively applies on both her fiftieth and fifty-fifth birthdays. (Pl.'s Opening Br. (#9) 20.) The Commissioner does not address this argument, instead maintaining that Ms. Carver can perform her past relevant work and is therefore not disabled.

In order to apply the Medical-Vocational Guidelines, the adjudicator must assess the claimant's exertional capacity, specifically the claimant's ability to perform sedentary, light, medium, or heavy work. 20 C.F.R. Pt. 404, Subpt. App. 2 §200.00. Neither Ms. Carver nor Dr. Sutherland

PAGE 9 - OPINION AND ORDER

made a specific statement regarding the exertional level of work Ms. Carver may or may not perform. Further proceedings, discussed below, are therefore necessary to establish Ms. Carver's RFC and any subsequent application of the Medical-Vocational Guidelines.

## REMAND

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000.), *cert. denied*, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings.

Under the "crediting as true" doctrine, evidence should be credited and an immediate award of benefits directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Harman,* 211 F.3d at 1178 (quoting *Smolen,* 80 F.3d at 1292).

The ALJ failed to provide legally sufficient reasons for rejecting Ms. Carver's testimony and the opinion of Dr. Sutherland. The ALJ's reasoning is furthermore not based upon the record. This evidence is credited. *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989).

In determining whether to award benefits or remand the matter for further proceedings the court must determine whether "outstanding issues remain in the record" under the second *Harman* prong. 211 F.3d at 1178. Neither party suggests the record warrants further development and the court finds no ambiguity in the record. However, because Ms. Carver and Dr. Sutherland did not quantify the exertional activity Ms. Carver may or may not perform, this court cannot determine the

effect of their testimony and opinions upon Ms. Carver's RFC assessment. Further proceedings are therefore necessary.

Upon remand, the ALJ must reassess Ms. Carver's RFC in light of the credited testimony and opinions of Ms. Carver and Dr. Sutherland. The ALJ must then correctly apply the Medical-Vocational Guidelines in light of any revised RFC findings, or consult a vocational expert. The ALJ must subsequently make properly supported step four and five findings.

## CONCLUSION

The Commissioner's decision that Ms. Carver did not suffer from disability and is not entitled to benefits under Title II of the Social Security Act is not based upon correct legal standards and is not supported by substantial evidence. The Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

Dated this __5th__ day of May, 2009.

/s/ Michael W. Mosman  
MICHAEL W. MOSMAN  
United States District Judge

PAGE 11 - OPINION AND ORDER